IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JACQUELYN DIANN HOUSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:22-cv-00765 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| PHH MORTGAGE CORPORATION, ) | |
| RUBIN LUBLIN TN, PLLC, ) | |
| ) | |
| Defendants. ) | |

**Memorandum Opinion and Order**

This case concerns the foreclosure by PHH Mortgage Corporation of 406 Oak Forge Drive, Antioch, Tennessee. (Doc. No. 1-1 at 12). Pending before the Court is Defendant PHH Mortgage Corporation's and Defendant Rubin Lublin TN, PLLC's joint motion to dismiss. (Doc. No. 10). Plaintiff does not dispute, and the Court thus accepts, that Defendant Rubin Lublin TN, PLLC should be dismissed from the action. Therefore, the Court need only address whether dismissal is proper for the remaining Defendant, PHH Mortgage Corporation. For the reasons stated herein, the motion to dismiss is GRANTED.

BACKGROUND[1]

The late Grover Houston ("Grover") and his wife, Plaintiff, bought 406 Oak Forge Drive (the "Property") together on or about March 9, 1987. (Doc. No. 1-1 at 11). The pair remained

---

[1] Unless indicated otherwise (as for example when particular facts are identified as being merely asserted by a party or otherwise qualified in some manner), the facts set forth in this section are undisputed. Thus, the facts set forth herein are either undisputed or specifically identified as disputed. In stating the facts herein, the Court often uses the language used by the party that asserted the facts in the first instance; this helps the Court ensure that the facts as stated herein are undisputed, even if the language used is less precise or thorough than the Court would have used were it writing on a blank slate.

married until Grover's death on June 7, 2020. (*Id.*). In late August 2009, Plaintiff quitclaimed[2] her interest in the Property to Grover in order to make him eligible for a reverse-mortgage loan[3] on the Property. (*Id.*). Grover then obtained a reverse mortgage from MetLife Home Loans, which was secured by a Deed of Trust dated August 19, 2009 (Doc. No. 10-1), pledging the Property as security.[4] (*Id.*).

Plaintiff and Grover resided at the Property from August 2009 to the time of Grover's death. (*Id.*). Grover allegedly asked the then-loan servicer, Champion Mortgage, to add Plaintiff to the reverse-mortgage loan, but Champion Mortgage never responded.[5] (*Id.*). Consequently, the status quo was maintained, and Grover remained the sole borrower on the reverse mortgage. (*Id.*).

---

[2] "[A] quitclaim deed is a form of conveyance. Like other deeds, it conveys whatever interest the grantor has, unless otherwise specially limited and confined by its terms." *See In re Johnson*, 187 B.R. 598, 601 (E.D. Tenn. 1994) (alteration original) (internal quotation marks omitted).

[3] The Court below describes the nature of a reverse mortgage.

[4] The parties do not make clear the methods by which Grover could have paid back the loan. However, the Deed of Trust (Doc. No. 10-1) suggests that upon an event that would make the loan come due, the borrower could pay back the secured debt in full (and thus extinguish any financial obligation to the lender). (*Id.* at 4). If the borrower is unable to pay back the full sum due, however, the lender may "invoke the power of sale [of the Property] and any other remedies permitted by applicable law." (*Id.* at 8). The parties likewise do not elaborate on what events transpired leading up to PHH's attempted foreclosure on the property. However, the Court suspects that PHH must have made a demand for repayment of the debt secured by the reverse mortgage followed by a request for the deed associated by the property, only then to resort to foreclosure. Nonetheless, given that the parties do not shed light on how PHH ultimately decided to foreclose on the property, the Court is content that PHH's attempted foreclosure reflects its most recent attempt to settle the debt outstanding on the reverse mortgage.

[5] The Court notes that Plaintiff states that Grover requested she (Plaintiff) be "added to" the loan, but she does not elaborate on what she means by this. (Doc. No. 1-1 at 11). And the Court is not aware of any widely-accepted single understanding of what it means to be "added to" a loan, and there seem to be multiple possibilities. For example, it could mean that the added person has the authority or permission to access the funds made available via the loan. Or it could mean that the added person became liable for amounts due on the loan. To the extent that Plaintiff has the latter meaning in mind —*i.e.*, that Grover requested that Plaintiff became liable for the loan balance along with him—such a request strikes the Court as odd. The granting of such a request certainly would be of potential benefit to the lender, but the Court does not see what benefit Grover or Plaintiff would gain from the granting of such a request. And the Court wonders why Plaintiff or Grover would believe that Plaintiff should be liable for a loan secured by the

After Grover's death, Plaintiff informed Champion Mortgage of Grover's passing and supplied several forms of documentation thereof. (*Id.*). Eventually, PHH Mortgage Corporation became the servicer for the mortgage and retained Defendant Rubin Lublin to foreclose on the reverse mortgage. (*Id.* at 12). The foreclosure sale was initially scheduled for September 8, 2022 but, at Plaintiff's request, the Chancery Court for Davidson County, Tennessee entered a restraining order against Defendants preventing foreclosure. (Doc. No. 1-1 at 18).

Plaintiff primarily requests[6] an order for declaratory judgment that the loan is in good standing and a request for an injunction to prevent Defendants from foreclosing on the Deed of Trust.[7] (*Id.* at 13).

PROCEDURAL BACKGROUND

This action originated in the Chancery Court for Davidson County, Nashville, Tennessee. Plaintiff filed a "Complaint for Declaratory Relief" in which she asked the Chancery Court to enjoin Defendants from foreclosing on the Deed of Trust until a hearing on the matter could be

---

property, given that Plaintiff relinquished her interest in the property to Grover—which is precisely the kind of thing that would indicate that *only* Grover should be liable for the loan balance.

[6] Plaintiff also requests an award for attorney's fees and costs, leave to amend the complaint as necessary, and any other relief the Court deems appropriate. (Doc. No. 1-1 at 12–13). Because the Court finds that dismissal is warranted as to both Defendants, the Court need not address whether Plaintiff is entitled to these remaining requests for relief.

[7] As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018). Though the Deed of Trust was placed in the record by Defendants as an attachment to their motion to dismiss, Plaintiff refers to the Deed of Trust in the complaint, and it is integral to her claim. Therefore, the Court can properly consider the Deed of Trust without converting Defendant's motion to dismiss into a motion for summary judgment.

held and issue declaratory judgment that the loan is in good standing.[8] (*Id.*). As noted, the Complaint also requests an injunction to enjoin Defendants from foreclosing on the Deed of Trust.[9] (*Id.*). Simultaneous to filing her complaint, Plaintiff filed a "Request for a Temporary Restraining Order," requesting the Chancery Court to enjoin Defendants from proceeding on the foreclosure of the Property located at 406 Oak Forge Drive, Antioch, Tennessee. (Doc. No. 1-1 at 6). The Chancery Court granted the request for the Temporary Restraining Order and set a hearing for September 13, 2022. (*Id.* at 4).

On September 30, 2022, Defendants filed a Notice of Removal in this Court. (Doc. No. 1). Pending before the Court is Defendants' joint motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. No. 10). Plaintiff filed a response (Doc. No. 14), and Defendants filed a reply (Doc. No. 15).

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause

---

[8] The Court notes that although the complaint is titled a "Complaint for Declaratory Relief," Plaintiff plainly requests equitable remedies distinct from declaratory relief, such as her request for an injunction against Defendants.

[9] Although Plaintiff ignores this reality, the Court notes that considering the particular allegations on which the request for an injunction is based, any injunction granted by the Court could not be a permanent injunction, but rather could enjoin Defendant only from foreclosing on the Property *on the specific grounds that Grover's death triggered repayment of the loan*; it would not serve to prevent foreclosure based on a different triggering event whereby the loan became due and was not paid prior to foreclosure.

of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of

any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

DISCUSSION

A Home Equity Conversion Mortgage ("HECM"), often referred to as a reverse mortgage, is a financial product that allows older homeowners to convert their accumulated home equity into liquid assets. *See* 12 U.S.C. § 1715z-20(a). "In a reverse mortgage, the borrower receives either a lump sum, periodic payments, or a line of credit from a lender based on this accumulated equity." *See Estate of Jones v. Live Well Financial, Inc.*, Civ. A. No. 1:17-CV-3105, 2017 WL 4176661, at *1 (N.D. Ga. Sept. 20, 2017). Unlike a traditional mortgage, reverse mortgages are generally not repaid until a specific 'trigger' event, such as death of the borrower of sale of the home. *See Melgarejo v. Bank of America N.A.*, Civ. A. No. 4:18-CV-00087, 2019 WL 1548912, at *1 (E.D. Tex. Feb. 14, 2019), *report and recommendation adopted* 2019 WL 1349396 (E.D. Tex. Mar. 26, 2019).[10] Reverse mortgages are also non-recourse loans, meaning that the lender may recover only up to the value of the borrower's house. *See Melgarejo*, 2019 WL 1548912, at *1. Reverse mortgages therefore can create risk for lenders; if the value of the house declines after the issuance of the loan, the lender may stand to suffer a financial loss upon sale or foreclosure of the home. *See id.*

Concerned that the risk may deter lenders from issuing reverse mortgages, Congress created a mortgage-insurance program, whereby the U.S. Department of Housing and Urban

---

[10] In the case of the Deed of Trust at issue in this case, the "triggering" events—*i.e.*, the events whereby the lender could "accelerate" the debt, meaning "require immediate payment in full of the entire debt—were set forth in Paragraphs 9(a)(i), 9(a)(ii) and 9(b). (Doc. No. 10-1 at 4-5). Paragraph 9(a)(i) is the provision that made the death of a borrower (such as Grover's death) a triggering event. (*Id.* at 4).

Development ("HUD") protects lenders from particular financial losses as long as the lenders comply with certain HUD regulations. *See Reverse Mortgage Solutions, Inc. v. United States Department of Housing and Urban Development*, 365 F. Supp. 3d 931 (N.D. Ill. 2019). But in creating the insurance program, Congress created friction between the statute permitting HUD to promulgate regulations and the regulations themselves, with respect to the treatment of non-borrowing surviving spouses[11] in the event of the borrowing spouse's death.

Specifically, the statute prohibits the Secretary of HUD from insuring a reverse-mortgage loan issued to a borrowing homeowner who has a spouse, unless such a mortgage provides that the homeowner's obligation to satisfy the loan is deferred until after the *latter* of the borrowing homeowner's death *or* the death of a surviving non-borrowing spouse of the homeowner (or is deferred until some other identified event). *See* 12 U.S.C. § 1715z-20(j).[12] The consequence of this particular provision was to protect non-borrowing surviving spouses from having to repay the loan

---

[11] The Court notes that the term "non-borrowing surviving spouse" theoretically could exclude a surviving spouse who maintained an ownership interest in the property even though not a "borrower" on the loan. This possibility could be relevant to the applicability of 12 U.S.C. § 1715z-20(j) where a mortgage company seeks to foreclose on a property against the will of a surviving spouse who is not a borrower on the loan but maintains an ownership interest in the property. In this case, this scenario is not implicated, because Plaintiff relinquished her ownership interest in the Property via quitclaim deed, prior to the events relevant to the applicability of 12 U.S.C. § 1715z-20(j). Accordingly, it is clear that the term "non-borrowing surviving spouse" applies to Plaintiff, even if it does not apply to spouses who still have an ownership interest in the property that is subject to the reverse mortgage.

[12] The Court need not go into detail on how an individual can satisfy the debt on a reverse-mortgage loan as a general matter, or how Grover's debt in particular could be satisfied upon the occurrence of a triggering event given the terms of his Deed of Trust. Although the parties do not provide details on this issue, the Court notes that the Deed of Trust unsurprisingly allows the debt to be paid (in a direct and straightforward manner) via money payments to the lender—*i.e.*, "pay[ing] the balance in full"—at least in the case of the triggering events listed in Paragraph 9(a)(ii) and 9(b). (Doc. No. 10-1 at 5). In that case, if the borrower is unable to pay off the loan, then the mortgagee is entitled to resort to foreclosure as a means to collect the debt. For the triggering event here at issue—set forth as Paragraph 9(a)(i), as noted above—it is less clear that the lender could not resort to foreclosure from the very outset under Paragraph 20, the Deed of Trust's provision authorizing foreclosure. (Doc. No. 10-1 at 8). But in any event, clarifying that issue does not appear required here; the question here is whether Plaintiff might be entitled to *relief* from foreclosure, not whether PHH skipped over required steps before resorting to foreclosure.

upon the death of their respective borrowing spouse, thereby avoiding the risk of foreclosure in the event that they could not afford to repay the loan. As explained by the court in *Reverse Mortgage Solutions*, however, one of the HUD regulations contained a provision requiring a mortgage balance to be paid in full if a mortgagor dies "and the property is not the principal residence of at least one surviving mortgagor [*i.e.* homeowner]." 24 C.F.R. § 206.27(c)(1) (1996) (since amended). Therefore, on the one hand the statute did not permit the Secretary to insure a reverse mortgage unless the loan included a deferral period for a non-borrowing surviving spouse (lasting until the non-borrowing surviving spouse's death), but on the other hand the regulations required a mortgage balance to come due as soon as the borrowing-spouse died.

To resolve this friction, HUD published Mortgagee Letter 2014-07, "directed to participating private lenders, requiring all reverse mortgages issued after August 4, 2014, to include a Deferral Period." *See Reverse Mortgage Solutions*, 365 F. Supp. 3d at 397. "The Deferral Period postpones a reverse mortgage's due and payable status (and subsequent foreclosure) until the death of the last eligible non-borrowing spouse." *Id.* On September 19, 2017, HUD officially implemented the Deferral Period into the HUD regulations. As already touched upon, one of these regulations is 24 C.F.R. § 206.55, which reads in full:

> (a) Deferral Period. If the last surviving borrower predeceases an Eligible Non–Borrowing Spouse, and if the requirements of paragraph (d) of this section are satisfied, the due and payable status will be deferred for as long as the Eligible Non–Borrowing Spouse continues to meet the Qualifying Attributes in paragraph (c) of this section and the requirements of paragraphs (d) and (e) of this section.

*See* 24 C.F.R. § 206.55. And it is this particular provision of the HUD regulations that Plaintiff argues entitles her to an injunction against the foreclosure of the Deed of Trust. With this background in mind, the Court now turns to Defendant's arguments raised in its motion to dismiss.

Defendant sets forth two grounds for dismissal: 1) 24 C.F.R § 206.55 does not apply to the reverse mortgage in this case because the mortgage was issued before the regulation came into

effect and 2) the regulation under which Plaintiff attempts to seek relief does not provide a private cause of action. (Doc. No. 11 at 1). Because the Court agrees that 24 C.F.R. § 206.55 is inapplicable to the reverse mortgage in this case, the Court does not reach the issue of whether Plaintiff has a private cause of action.[13]

As discussed, 24 C.F.R. § 206.55 provides a deferral period after the death of a borrower, during which time a reverse mortgage will not become due as long as the eligible non-borrowing spouse meets certain qualifying attributes contained in the HUD regulations. The parties do not dispute that Plaintiff meets the qualifying attributes required to be entitled to the protections of § 206.55. Instead, Defendant argues that § 206.55 does not apply to the reverse mortgage at issue in this case because the mortgage was issued before the regulation came into effect. (Doc. No. 11 at 1). It follows, according to Defendant, that the death of Grover, being the sole borrower, triggered the obligation to pay the loan in full. (Doc. No. 10-1 at 4).

Instead of attempting to rebut Defendant's argument that § 206.55 does not apply retroactively, Plaintiff suggests she may be protected under *other* federal laws and regulations. (Doc. No. 14 at 2). Indeed, according to Plaintiff, while she "did cite to 24 CFR 206.55 as an example, the Complaint simply references, 'applicable referral laws and regulations,' and is not necessarily limited to the single one cited." (*Id.*). Plaintiff then suggests that "discovery and production of documents" would assist in her identifying the proper legal basis of her claim.

First, the Court is not convinced that Plaintiff was citing 24 C.F.R. § 206.55 as merely an "example" of a legal basis on which she could obtain relief. The paragraph of the complaint referenced by Plaintiff, states "[u]nder applicable federal laws and regulations (*specifically* 24 CFR

---

[13] The Court notes that Defendants discuss in some detail the Mortgagee Optional Election ("MOE") program. However, because Plaintiff does not state this as a basis for potential relief and fails to respond to Defendants' raising of the issue in their motion to dismiss, the Court need to address the applicability of the MOE to the reverse mortgage in the resolution of Defendants' motion to dismiss.

206.55)…" (Doc. No. 1-1 at 12) (emphasis added). As written, it appears to the Court that Plaintiff clearly identified § 206.55 as the relevant legal basis for her relief and is now attempting to rewrite her complaint through her response in the face of a colorable challenge by Defendant. *See United States ex rel. Sibley v. Univ. Chicago Med. Cent.*, 486 F. Supp. 3d 1210 (N.D. Ill. 2020) ("[I]t is an axiomatic rule that a plaintiff may not amend his complaint in his response brief.") (internal quotation marks and citation omitted). Second, even if the Court were convinced that the complaint's allegations are broad enough for Plaintiff to show plausibility of relief (as required by *Iqbal* and *Twombly*) based on a law or regulation other than 24 C.F.R. § 206.55, she fails to identify one in her response. And it is insufficient for Plaintiff merely to claim she could identify one through discovery, because Plaintiff must plead a plausible claim for relief *before* being entitled to discovery. This is because "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff [who does not meet the requirements of *Iqbal* and *Twombly*]." *Iqbal*, 556 U.S. at 678–79.

Finally, although Plaintiff fails entirely to address Defendant's argument, the Court agrees with Defendant that § 206.55 does not apply retroactively. "Because [r]etroactivity is not favored in the law, [] courts should not construe congressional enactments and administrative rules ... to have retroactive effect unless their language requires this result." *See BellSouth Telecommunications, Inc. v. Southwest Telephone, Inc.*, 462 F.3d 650, 657 (6th Cir. 2006). At least one other court, in discussing the history of reverse mortgages and the regulations creating the deferral period at issue in this case, referred to § 206.55 as offering "forward-looking relief." *See Reverse Mortgage Solutions*, 365 F. Supp. 3d at 397. Plaintiff fails to provide any reason why the

Court ought to stray from the general rule that administrative regulations should not be applied retroactively. Therefore, the Court declines to apply § 206.55 to the reverse mortgage in this case.

In summary, Grover's death triggered the payment of the reverse mortgage, which has in turn led to PHH's foreclosure on the Property. Plaintiff, a non-borrower surviving spouse, is not entitled to the protections of 24 C.F.R. § 206.55 because the reverse mortgage was issued prior the regulations' enactment.[14]

## CONCLUSION

For the reasons stated herein, Defendants' joint motion to dismiss (Doc. No. 10) is GRANTED.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[14] The Court acknowledges that the outcome of this case, one the Court finds to be dictated by the alleged facts and applicable law, creates a risk of a personal hardship for Plaintiff. The dismissal of this action could result in the mortgagee foreclosing on the home that Plaintiff shared with her husband for several years (though the Court makes no decision or comment on what the mortgagee should or should not do with respect to foreclosure). Reverse mortgages are complex financial products that are marketed and made available exclusively to older homeowners. And it is a basic observation regarding a reverse mortgage that when an individual agrees to a reverse mortgage, they are agreeing to give up equity in their home in exchange for cash—a decision that can have immediate benefits, but also one which can carry with it unpleasant future consequences. Plaintiff in this case gave up her interest in her home via quitclaim deed to her husband, and her husband was the sole borrower on the reverse mortgage—two important facts (though not the only facts) that have resulted in the outcome in this case.